STATE, PLAINTIFF-APPELLEE, *v.* FERGUSON, DEFENDANT-APPELLANT.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 25850.   Decided July 6, 1962.

*Mr. John T. Corrigan*, prosecuting attorney, *Mr. Thomas L. Osborne* and *Mr. Charles W. Laurie*, assistant prosecuting attorneys, for plaintiff-appellee.

*Messrs. Abraham, Karam & Stanley,* for defendant-appellant.

(DOYLE, J., of the Ninth District, sitting by designation in the Eighth District in place of HURD, J.)

Skeel, J. This appeal comes to this court on questions of law from a judgment and sentence entered after the defendant withdrew his plea of not guilty to two counts of an indictment charging murder in the first degree and pleaded guilty to homicide on each count. The withdrawal of his pleas of not guilty and the entering of his pleas of guilty occurred after the jury had been impaneled, sworn and one of the state's witnesses examined. After the pleas of guilty had been entered, a three judge court in a completely new trial for the purpose of determining the degree of guilt heard all of the evidence and found the defendant guilty of murder in the first degree on both counts, recommending mercy on one count and withholding mercy on the other count. Thereupon, the court sentenced the defendant to life imprisonment on the count in which mercy was extended, and on the count where mercy was withheld, the death sentence was imposed.

The defendant did not file a notice of appeal from the judgment and sentence, but upon motion seeking leave to appeal filed November 10, 1961, this court granted such motion and all necessary procedural steps have since been taken to present defendant's assignments of error to this court for consideration.

The defendant's assignments of error are:

"1. The court erred in returning two verdicts of guilty for first degree murder when only one proper verdict could have been returned, and by imposing two sentences for the commission of but one offense.

"2. The court erred in sentencing defendant to death for first degree murder, without trial jury (sic), based upon a plea of not guilty entered by defendant, who, at the time, did not properly understand the nature and consequences of said plea of guilty and by refusing to permit defendant to withdraw said plea of guilty."

The evidence shows that on March 4, 1961, the defendant with one Thornton entered the drug store of the deceased, Benjamin Kaufman, which store is located at the corner of East 30th Street and Central Avenue in the City of Cleveland, Cuya-

hoga County, Ohio, with the intent and purpose of committing a robbery. Upon entering the store, Thornton pointed a gun at the clerk who was then standing near the cash register in the front of the store and said, "This is a hold up. Give me the money in the cash register." The clerk said, "Don't shoot, get the money yourself." which Thornton proceeded to do. In the meantime Ferguson who had entered the store with Thornton proceeded farther back to where one Mallory had been talking to the owner Kaufman. . They had been seated at a table and Mallory had just gotten to his feet and started toward the front door when he was met by Ferguson who "stuck the gun in my stomach and said, 'This is a hold up.'" This witness started to back up when "Doc" Benjamin Kaufman started hollering. He said, "Take the money, don't shoot." Before Kaufman could get to his feet, Ferguson "smacked him and knocked his glasses off." Mallory then ran to the basement and heard a shot fired. The clerk (Walter Manning), who was being held at the point of a gun by Thornton, testified as follows:

"Q. All right. What happened then?

"A. Well, then I heard a shot.

"Q. From what direction did that sound come?

"A. It came from the back of the room.

"Q. And specifically where in the back?

"A. Well, not where people can walk through.

"Q. Did it come from the area where Mr. Kaufman and Mr. Mallory were, had been seated?

"A. Yes.

"Q. When you heard the shot, what did you do?

"A. I turned and looked that way, looked where the sound came from.

"Q. When you turned and looked, what did you see?

"A. Well, I saw 'Doc' running towards the front of the store.

"Q. That's Mr. Kaufman?

"A. Yes.

"Q. Was anything said, if you recall, by 'Doc'?

"A. He was shouting, 'Take the money, take the money.'

"Q. When you saw him running, did you see Mr. Ferguson?

"A. Yes.

"Q. What was he doing?

"A. He was running after him.

"Q. And proceed to tell us what took place.

"A. Well, when 'Doc' got to the door, he opened the door. He had his hand—he got his hand on the knob and he had the door open a little bit and Ferguson got up to him and they were struggling. The man, Thornton, came from behind the counter and went to the other side of the 'Doc' and all three of them were struggling in front of the door.

"Q. I see. Then what took place?

"A. Then I saw Ferguson aim a gun at 'Doc's' head and then I saw, I heard a shot. I heard a shot then."

"* * *

"Q. Keep your voice up now.

"A. 'Doc' was in a crouch like this. He had his legs, his knees, bent down like this, and Ferguson's hand was sort of placed on his shoulder, and he pointed the gun at his head and then I heard a shot.

"Q. And what position was Mr. Thornton in at that time?

"A. Well, Thornton was on the other side of 'Doc.'

"Q. Take the other side.

"A. And he was struggling with him, too. I can't tell you how he was holding him or not. He was just struggling with him.

"Q. All right, take the stand.

(The witness complied.)

"Q. After the shot, what did Mr. Kaufman do?

"A. Well, he stumbled back and he fell down."

The defendant made two written statements after he was taken into custody. In the second statement, the defendant admitted that he had the gun in his right hand when the second shot here referred to was fired, of which Kaufman was the victim. In the first statement the defendant put the blame for Kaufman's death on Thornton. However, at no time did the defendant deny that he and his accomplice planned an armed robbery of Kaufman and that they were acting in furtherance of that plan when Kaufman was killed by gunshot by his (Ferguson's) hands. The record also shows that this de-

fendant had participated in four armed robberies within a period of three months before March 4, 1961, in one or two of which he brutally assaulted his victim, as he did in this case, which act in this case was separate and apart from and was committed before the act of shooting took place.

As the trial before the jury commenced and after the first witness for the state (Walter Manning, the clerk) had been examined on the occurrences in Kaufman's drug store on March 4th, including his description of the firing of the shot that killed Kaufman, court was recessed until the next morning when the record shows the following:

"The Court: Judge Duffy and Mr. Miller, it was indicatet to the Court a few minutes ago that there was a desire on the part of this defendant to withdraw his plea of not guilty, and to enter a plea of guilty to the indictment. Do I understand that correctly?

"Mr. Duffy: That is right, sir.

"The Court: All right, make your statement, then.

"Mr. Duffy: We understand from the statutes that the Court will hear the evidence, three judges.

"The Court: Yes, I will explain that. Now, Judge Duffy and Mr. Miller, will you make your statement in connection with this plea that it has been indicated the defendant desires to enter?

"Mr. Duffy: To withdraw the plea of not guilty and enter a plea of guilty to the indictment.

"The Court: Now, Mr. Ferguson, you understand that you are entering a plea of guilty to a charge of first degree murder, and the penalty for such a charge as provided by the statute is life in the penitentiary; or if a three-judge Court recommends mercy after hearing the evidence—that is life in the penitentiary if a three-judge Court after hearing the evidence recommends mercy. If the Court does not recommend mercy, then the penalty provided by law is death in the electric chair. Now, do you understand that?

"The Defendant: Yes.

"The Court: And before undertaking to change your plea here, you have conferred with your family and your attorneys, have you?

"The Defendant: Yes.

"The Court: And you have had the benefit of the counsel and advice in this regard of Judge Duffy and Mr. Don Miller, your attorneys?

"The Defendant: Yes.

"The Court: The answer is 'Yes'?

"The Defendant: Yes.

"The Court:: And you are satisfied to enter this plea of guilty now as your own free and voluntary act? You are?

"The Defendant: Yes."

The defendant's plea of guilty to both counts of the indictment was then entered under the provisions of Section 2945.06, Revised Code, and the trial of the issues of the degree of guilt before three judges of the Common Pleas Court of Cuyahoga County was had, the panel of judges being designated by the Chief Justice of the Court.

The judgment of the court was entered on June 23, 1961. On November 10, 1961, the defendant filed a motion seeking to withdraw his plea of guilty entered June 21, 1961, setting out his family background, that is, that he is a Negro, nineteen years of age, both parents had died—his mother when he was six years of age and his father when he was eighteen, and that when this plea was entered, he was indigent and unable to employ counsel.

He also alleged that he had a mistaken impression that a plea of guilty would subject him to a maximum penalty of life imprisonment, that he believed he was not guilty but was coerced into entering pleas of guilty, and that he was deprived of due process of law in that he should be afforded a fair trial under the Constitution and laws of this state and of the United States.

A hearing of this motion was conducted, the proceedings being set out in what is called a supplemental bill of exceptions, which is not certified by the court and does not contain the affidavit of the defendant said to have been filed with the motion. No evidence was taken on the motion, counsel for the defendant arguing that he felt the defendant was influenced in entering a plea of guilty on the advice of his sister. This sister's testimony, received during the trial, of the question of the degree of guilt, shows that she was a senior in college seeking a normal school degree. The record also shows that

this defendant had two outstanding lawyers (one a former Judge of the Municipal Court of Cleveland and the other a former United States District Attorney) assigned to his defense under the provisions of Section 2941.50, Revised Code, whose judgment was relied upon, together with the advice of members of his family, in entering his pleas of guilty during trial and after the tworn testimony of an eye witness of defendant's part in causing the death of Mr. Kaufman.

Coming now to the consideration of the first assignment of error, it is claimed that a defendant cannot be guilty of two separate crimes of murder in the first degree in purposely causing the death of a person while perpetrating or attempting to perpetrate a robbery even though the evidence also supports a purposeful killing of such human being of deliberate and premeditated malice. With this contention we cannot agree. Section 2901.01, Revised Code, defines three separate and distinct crimes of murder in the first degree. The section provides:

"No person shall purposely, and either of deliberate and premeditated malice, or by means of poison, or in perpetrating or attempting to perpetrate rape, arson, robbery, or burglary, kill another."

Where the state can establish that a defendant purposely and of deliberate and premeditated malice killed another while committing or attempting to commit a robbery, a verdict of guilty on that count of an indictment charging such offense will not bar a verdict of guilty on a second count in the same indictment charging the defendant with murder in the first degree in purposely causing the death of the same person by the same act or series of acts in the same transaction while perpetrating or attempting to perpetrate a robbery as charged in the second count of the indictment, where the evidence supports the elements of both crimes beyond a reasonable doubt. There are many circumstances where a single act committed in the same transaction can result in committing two or more crimes. It must be observed that here separate crimes are charged in the two separate counts, of the same indictment, and that the evidence necessary to support the elements of the crime charged in one count would not without additional or different proof justify or support a finding of guilty on the other count. There

was substantial evidence presented in this case which supports all the elements of both counts of the indictment, justifying a finding of guilty on both counts beyond a reasonable doubt.

In the case of *City of Akron* v̇. *Kline*, 165 Ohio St., 322, 135 N. E. (2d), 265 (see Court of Appeals opinion, 84 Ohio Law Abs., 124, 170 N. E. (2d), 265), the court said on page 324: "A single act may constitute several offenses by virtue of several statutes or ordinances. A conviction on one charge may not be a bar to a subsequent conviction and sentence on the other charge unless the evidence required to support the conviction on one would be sufficient to warrant a conviction on the other. *Duvall* v. *State*, 111 Ohio St., 657, 146 N. E., 90."

Also, in *State* v. *Benjamin*, 102 Ohio App., 14, 132 N. E. (2d), 761, the defendant had been found guilty on each of two counts of an indictment wherein the defendant was charged separately with the crimes of maiming and of disfiguring the prosecuting witness with the use of lye. The court said in the third paragraph of the syllabus:

"An indictment under Section 12416, General Code (Section 2901.19, Revised Code), containing two counts, one charging maiming by unlawfully and purposely putting out an eye, and the other charging the purposeful disfigurement by the throwing of lye water, charges two separate and distinct crimes; and the fact that a single act of the accused constitutes both crimes does not relieve such accused from prosecution on each count."

In the opinion of this case, many of the leading authorities are cited supporting the rule that a single act may violate two or more criminal statutes or ordinances.

Also, in the case of *State* v. *Johnson*, 112 Ohio App., 124, 165 N. E. (2d), 314, paragraph two of the syllabus provides:

"Where offenses charged are separate and distinct, either with respect to statutory definition or because, as charged, they grow out of different transactions and different evidence is needed to prove each, the constitutional inhibition against double jeopardy is not applicable; and, so long as the offenses charged are not factually inconsistent, an accused may be found guilty and sentenced as to each of the offenses charged."

In the case of *State* v. *Meadows*, 105 Ohio App., 86, 148

N. E. (2d), 345, the defendant was indicted on two counts which charged him with unlawfully and maliciously cutting and/or stabbing with intent to wound and with unlawfully and maliciously cutting and/or stabbing with intent to kill. The court held that the defendant could be convicted on each of the two counts of the indictment for the reason that each count defined a separate offense, although both offenses were defined in a single statute.

The second claim of error is not well taken. There is no constitutional provision prohibiting a three man court in a case where the defendant is charged with murder in the first degree on a plea of guilty to the crime of homicide to determine the degree of guilt without the intervention of a jury. (Section 2945.06, Revised Code.) The issue then to be decided has to do with the penalty. The claim that the defendant was not fully and properly advised of the consequences of withdrawing his pleas of not guilty and entering pleas of guilty is not supported by the record above quoted. He was afforded, by assignment, two lawyers of unquestioned ability and integrity, having been so recognized for a long period of time before the Bench and Bar of Cuyahoga County. His family participated with counsel and defendant in considering the question. Also, from the sworn testimony received before and after the change of plea which was not controverted by him, there can be no question of his direct participation in the purposeful killing of Kaufman of deliberate and premeditated malice while perpetrating a robbery.

There is no evidence to support the claim asserted by the defendant that the three judge court would in fact extend mercy if pleas of guilty were presented. Such a claim is a direct attack on the integrity of the court, without any foundation whatever in the record. The defendant's affidavit filed with his motion to withdraw his pleas of guilty months after the judgment of the court was entered is not in fact before this court in this appeal. While it is in the transcript, it was never offered in evidence nor is it contained in the so-called supplement to the bill of exceptions. There can be no question but that such affidavit was intended to be considered as evidence so that unless presented and received in evidence by the trial court and upon appeal, such affidavit is certified as a part of the evidence in a

bill of exceptions, it is not a part of the evidence to be considered on appeal on questions of law before the Court of Appeals. *Willett, Adm.* v. *N. Y. C. Rd. Co.*, 73 Ohio App., 59, 54 N. E. (2d), 317. But even if it be considered that the affidavit is before this court, in considering the question of whether or not the court committed prejudicial error in rejecting defendant's motion seeking the right to withdraw his pleas of guilty, it would not change the result. No legal prejudice to the defendant appears in this record because of the court's overruling of the defendant's motion to withdraw his pleas of guilty under the circumstances here presented and on the facts undisputed and established on the face of the whole record before us.

The judgment is, therefore, affirmed.

Exceptions. Order see journal.

KOVACHY, P. J., DOYLE, J., concur.